**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

JANE DOE,

Plaintiff,

- *against* -

LONG ISLAND MOTORS, INC. and DAVID DELVECCHIO, *Individually*,

Defendants.

-----------------------------------------------------------------X

**Case No.: 21-cv-1232**

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, JANE DOE, (hereinafter "Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against LONG ISLAND MOTORS, INC. and DAVID DELVECCHIO, Individually, (collectively, as "Defendants") alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1. This is a civil action based upon Defendants' violations of Plaintiff's rights guaranteed to her by: (i) the sex discrimination provisions of **Title VII of the Civil Rights Act of 1964,** as amended ("Title VII"); (ii) the sex discrimination provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iii) the gender discrimination provisions of the **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 *et seq.* ("SCHRL"); (iv) any other claim(s) that can be inferred from the facts set forth herein.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq.*

3. The Court has supplemental jurisdiction over all state and county law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within this judicial district.

**PROCEDURAL PREREQUISITES**

5. Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated February 19, 2021, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

**PARTIES**

8. At all relevant times herein, Plaintiff is a resident of the State of New York, Queens County, and was and is a "person" and an "employee" entitled to protection as defined by the federal and state laws invoked herein.

9. At all relevant times herein, Defendant LONG ISLAND MOTORS, INC. (hereinafter "LIM"), is a domestic business corporation incorporated under the laws of the State of New York with a principal place of business located at 720 Sunrise Highway, West Babylon, New York 11704.

10. At all relevant times herein, Defendant DAVID DELVECCHIO (hereinafter "DELVECCHIO") worked for Defendant LIM as the General Manager and was Plaintiff's supervisor and had the ability to make decisions regarding the terms and

conditions of Plaintiff's employment.

## MATERIAL FACTS

11. In or around May 17, 2020, after having applied for a position with Defendant LIM on Craigslist, Plaintiff received a phone call inviting her to interview with Defendant DELVECCHIO.

12. The following day, Plaintiff met with Defendant DELVECCHIO for the interview.

13. As Plaintiff was sitting down, her purse accidently tugged onto her blouse, pulling it up and revealing a portion of a tattoo on her stomach.

14. Immediately, Defendant DELVECCHIO zoned in on Plaintiff's tattoo and said "Wow, you have nice tattoos, can I see them all?" As she had traveled a long way to get to the dealership and needed the job, Plaintiff simply chuckled, trying to brush it off, and sat down.

15. Plaintiff was ultimately hired by Defendants and on May 22, 2020, she began working as a sales specialist, earning a weekly salary of $200.00 plus commission and bonus.

16. On her first day, May 22, 2020, Plaintiff approached Joanne Peppaceno (hereinafter "Peppaceno"), the finance supervisor, to discuss her concerns regarding her lack of experience. In response, Peppaceno assured Plaintiff that she had nothing to worry about, that she would receive training and assistance and invited Plaintiff to come to her with any questions.

17. In the course of her conversation with Peppaceno, Plaintiff asked Peppaceno if she could keep an eye on Defendant DELVECCHIO because he "creeped her out." Instantly, Peppaceno exclaimed, "I always knew he liked black girls!" Peppaceno guaranteed Plaintiff that she would look after her and that there was nothing to worry about.

18. Later that day, Defendant DELVECCHIO called Plaintiff into his office. After initially providing Plaintiff with assurances as to her job security, Defendant DELVECCHIO asked Plaintiff to lunch, telling her that he would "show her a good time." In response, Plaintiff politely declined.

19. By June 2020, Plaintiff began to notice that Defendant DELVECCHIO would call her into his office 10-15 times a day on minor matters. Plaintiff was the only employee treated in this fashion and it was so apparent that Plaintiff's co-workers noticed and commented on the attention Plaintiff was receiving.

20. On one occasion, when Defendant DELVECCHIO summoned Plaintiff into his office, Plaintiff noticed that Defendant DELVECCHIO had a panel of screens behind his desk displaying the video feeds of surveillance cameras throughout the dealership.

21. Plaintiff looked over and saw a screen which appeared to show a camera facing her desk.

22. Plaintiff was extremely distressed upon discovering the camera directed at her desk and, as a result, Plaintiff began to wear a hat to work, aware that Defendant DELVECCHIO was leering at her from his office.

23. However, Defendant DELVECCHIO forbade Plaintiff from wearing a hat in the workplace and Plaintiff was only able to wear a hat for several hours.

24. In or around early June 2020, Defendant DELVEHCCIO's sexual attention became more explicit when he told Plaintiff, "If I were given the chance, I would go down on you." Extremely uncomfortable, Plaintiff responded with a joke in an attempt to alleviate the situation.

25. On or about June 13, 2020, Plaintiff reached out to Jemima (Last Name Unknown) (hereinafter "Jemima"), to address the unfounded rumor going around the dealership that

   Plaintiff had a crush on another of their co-workers, Evan (Last Name Unknown) (hereinafter “Evan”).

26. This rumor had caused Jemima to treat Plaintiff in a hostile manner because Jemima was romantically interested in Evan.

27. In the course of this discussion, Plaintiff disclosed to Jemima Defendant DELVECCHIO’s inappropriate behavior towards her.

28. Specifically, Plaintiff disclosed to Jemima that Defendant DELVECCHIO told her, a few weeks prior, “If I were given the chance, I would go down on you.”

29. On or about June 15, 2020, Plaintiff approached Evan, to clear up the rumor and tell Evan that she had no romantic interest in him, rather it was Jemima who was romantically interested in Evan.

30. When Jemima became aware of this, she blurted out, “Oh really, tell everyone how you told me David has been hitting on you, tell them what you told me on Saturday!”

31. Defendant DELVECCHIO heard the exchange and called Plaintiff into his office and anxiously asked her, “What are you saying around here about me? You’re telling people I want to take you out?”

32. Plaintiff was afraid to explain to Defendant DELVECCHIO how she really felt because she was concerned that she might lose her job.

33. Defendant DELVECCHIO continued to probe Plaintiff for details and asked, “What are you saying to people? Everyone here has a problem with you. Joanne is through with you and if you have issues with Jemima, I will fire you before I fire her.” Defendant DELVECCHIO then dismissed Plaintiff from his office.

34. That following day, when Plaintiff arrived at work, she was called into a meeting with the entire staff by Defendant DELVECCHIO.

35. The meeting appeared designed to attack Plaintiff as several of her co-workers made personal comments towards Plaintiff. For example, Jemima said, "I did not want to mention what you told me about David but it was a low blow when you told Evan I had a crush on him."

36. Having been beaten down, Plaintiff felt so defeated that all she could do was apologize and tell her colleagues that she wanted to put it all behind her and move forward.

37. Later that day, as Plaintiff was about to leave, Defendant DELVECCHIO called Plaintiff into her office.

38. When she entered, Defendant DELVECCHIO brought up the meeting earlier that day and asked Plaintiff what she was telling people.

39. Fearful of losing her job, Plaintiff responded, "I said you were cool and I liked you."

40. Defendant DELVECCHIO then told Plaintiff to sit down and said, "so you like me?" while he unzipped his pants, pulled out his penis and began to stroke it.

41. His penis in his hand, Defendant DELVECCHIO demanded that Plaintiff come over to his side of the desk.

42. Plaintiff was terrified as she did not know how she was going to escape the situation.

43. When Plaintiff walked over to his side of the desk, Defendant DELVECCHIO said, "Baby tell me what you want." Plaintiff pleaded that she just wanted her job.

44. Defendant DELVECCHIO then began to rub Plaintiff's butt with his left hand as he continued to stroke his penis with his right hand.

45. Plaintiff exclaimed, "What are you doing, I can't have sex with you! I can't give you head! I can't do anything sexual with you."

46. In a further attempt to extricate herself from the situation, Plaintiff told Defendant DELVECCHIO that she was on her period. Defendant DELVECCHIO responded that he did not care.

47. At that point, Defendant DELVECCHIO stopped stroking his penis but only to grab Plaintiff's hand and place it onto his penis, forcibly stroking his penis with Plaintiff's hand.

48. Defendant DELVECCHIO took his other hand and placed it inside of Plaintiff's pants, digitally penetrating Plaintiff's anus while he asked her if she "liked it."

49. Plaintiff felt powerless as Defendant DELVECCHIO sexually assaulted her, desperately hoping it would end soon. Within a few seconds, Defendant DELVECCHIO ejaculated in Plaintiff's hand.

50. Fearing for her safety if she acted in the manner she wished, Plaintiff calmly walked out, gathered her belongings and went to the restroom where she promptly vomited.

51. Plaintiff felt degraded, horrified, nauseated, and repulsed.

52. Several days later, on June 19, 2020, Peppaceno approached Plaintiff to discuss the meeting from the previous week.

53. As they were discussing the details from the meeting, Plaintiff mentioned to Peppaceno that Defendant DELVECCHIO had earlier told her that he could report her on account of how she had yelled at Plaintiff in front of customers weeks prior.

54. Defendant DELVECCHIO then interrupted the conversation between Plaintiff and Peppaceno and directed Plaintiff to take his daughter's car for inspection.

55. When Plaintiff returned, she saw Defendant DELVECCHIO and Peppaceno in a heated argument.

56. Defendant DELVECCHIO yelled out to Plaintiff, "Come in here!"

57. Plaintiff walked over to Defendant DELVECCHIO and Peppaceno, and Defendant DELVECCHIO screamed at Plaintiff, "You told Joanne I wanted to report her, you are a liar, all you do is run your mouth, I don't want you working here anymore!"

58. As Plaintiff was gathering her belongings to walk out Defendant DELVECCHIO yelled, "I will fuck your background up, I will make sure you never work for another company again!"

59. Plaintiff was humiliated and quickly walked out of the dealership.

60. As a result of Defendants' actions, Plaintiff feels extremely humiliated, offended, disturbed, degraded, victimized, embarrassed, and emotionally distressed by the blatantly unlawful and discriminatory and retaliatory conduct.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered loss of income, commissions, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses.

62. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

63. Defendants' conduct has been malicious, willful, outrageous, and/or reckless and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages against all Defendants, jointly and severally.

64. As a result of the above, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT LONG ISLAND MOTORS**
*Sex Discrimination in Violation of Title VII*

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin.

67. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against Plaintiff because of her sex/gender.

68. As described above, Defendant LIM discriminated against Plaintiff on the basis of her sex, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her sex.

69. As a result of the unlawful discriminatory conduct of Defendant LIM in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

70. As a result of Defendant’s actions, Plaintiff was humiliated, degraded, victimized, embarrassed, and emotionally distressed.

71. Defendant's conduct was malicious, willful and conducted with full knowledge of the law.

72. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*Sex Discrimination in Violation of the NYSHRL*

73. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

74. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

75. As described above, Defendants discriminated against Plaintiff on the basis of her sex, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's sex. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

76. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of

monetary damages and other relief.

77. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**
*Gender Discrimination in Violation of SCHRL*

78. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79. The Administrative Code of Suffolk County § 528-7(A)(1) provides that

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

80. The Suffolk County Administrative Code §528-6 defines group identity as "[t]he actual or perceived race, color, creed, age, national origin, alienage or citizenship status, **gender**, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual. (Emphasis added.)

81. As described above, Defendants discriminated against Plaintiff on the basis of her gender in violation of the SCHRL by, including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

82. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**JURY DEMAND**

83. Plaintiff hereby demands a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by **Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law,** in that Defendants discriminated against Plaintiff on the basis of her sex (female) by subjecting Plaintiff to a hostile work environment;

B. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's state law claims;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
March 8, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

**By:** **/s/** Marjorie Mesidor

Marjorie Mesidor, Esq.
Joseph Myers, Esq.
**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
mmesidor@tpglaws.com
jmyers@tpglaws.com