**PHILLIPS & ASSOCIATES**
*Attorneys at Law*
45 BROADWAY, SUITE 430, NEW YORK, NEW YORK 10006
TEL: (212) 248-7431 FAX: (212) 901-2107

March 4, 2022

**VIA ECF**
Hon. Steven Tiscione
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    Re:  **Jane Doe v. Long Island Motors and David Delvecchio**
           **Dkt. No. 21-cv-1232 (GRB)(ST)**

Your Honor:

    This office represents Plaintiff, Jane Doe, in the above-referenced action. Plaintiff writes per the Court's Order dated February 24, 2022 to provide a supplemental letter brief regarding damages. While it was discussed at the Inquest Hearing that Plaintiff would submit supplemental information regarding backpay damages, Plaintiff inadvertently overlooked that on December 15, 2021, this Court already ruled that Plaintiff established liability and is entitled to $18,402.14 in backpay damages, $4,973.50 in attorney's fees, and Ordered Plaintiff to request an inquest (if desired) to establish an award for emotional distress and punitive damages (*See* Dkt. No. 18). As such, Plaintiff's below letter brief below only addresses that Plaintiff's testimony establishes that emotional distress and punitive damages are proper.

    BRIEF FACTUAL RECAP BASED ON PLAINTIFF (AND HER MOTHER'S) TESTIMONY

    Plaintiff testified that from the moment she met Defendant David Delvecchio at her interview on May 18, 2020 he began sexually harassing her, which was unwanted, made her uncomfortable, and caused her emotional distress. Plaintiff specifically testified that Delvecchio, when Plaintiff's bag over her shoulder caused her blouse to pull down, made inappropriate and harassing comments regarding Plaintiff's tattoos on her midriff. Delvechhio told Plaintiff that he liked her tattoos, told her she had a nice body and that she was beautiful, and asked whether she had any other tattoos (which were not visible under Plaintiff's clothes) and asked to see them. Plaintiff immediately felt uncomfortable and rejected this advance and did not show him her other tattoos. Defendant Delvecchio then hired Plaintiff as a car sales associate, which Plaintiff accepted because she needed a job to support her family.

During Plaintiff's first week of employment Plaintiff testified that she could see the computer screen in Delvecchio's office which displayed video surveillance cameras placed around the car dealership. Plaintiff noticed that one of the cameras was directly pointed at and zoomed in on Plaintiff's work station, and that no other camera was directly pointed at any other employee's work station. Plaintiff again felt uncomfortable and began wearing a hat to work to block Delvecchio from watching her at her desk. The next day another employee named Jemma, at the behest of Delvecchio, ordered Plaintiff to not wear a hat to work. Delvecchio then ordered Plaintiff to move her desk from the back of the office directly next to his office under the guise that he had to "train" her. However, Delvecchio was not the person who trained Plaintiff – it was another employee Joanne Peppaceno – who, in fact, trained Plaintiff. Moving Plaintiff's desk made her uncomfortable. Plaintiff also spoke with Joanne Peppaceno who once stated to Plaintiff that she knew Delvecchio "had a thing for black women".

From the start of Plaintiff's employment Delvecchio would call Plaintiff into his office regularly, sometimes daily, to assign her sham tasks which in reality was him luring Plaintiff into his office so he could sexually harass and eventually sexually assault her. Delvecchio specifically assigned Plaintiff's tasks that would normally be handled by a "porter" (and not a car sales associate) including taking cars to get tune ups and inspections. Delvecchio would close the door during these "meetings" so no other employee could hear or see what transpired.

During these several sham meetings Delvecchio would insentiently tell Plaintiff that she was beautiful, that she had a nice body, and most horrifically, asked her out on several dates even after she said no several times, and that if she allowed him to "go down on her" it would be the "best experience of her life". Delvecchio told Plaintiff that she was beautiful and had a nice body at least 3 times per week during her employment. Plaintiff rejected Delvecchio's advance to go out on a date with him saying that "she was just here to work." However, Delvecchio proceeded to ask Plaintiff out on a date after her initial rejection 3 times per week for remainder of her employment (just under one month). Plaintiff reported this to Jemma. Delvecchio's comment that he desired to perform oral sex on Plaintiff and that it would be the "best experience of her life" was severe sexual harassment which was unwanted. Plaintiff rejected these advances each time telling him she was "just there to work" and eventually became "standoffish" to Delvecchio displaying body language and a demeanor that made it clear she was not interested. Plaintiff would also ignore him or pretend she did not hear him with hopes the harassment would stop. Plaintiff even informed Delvecchio she was interviewing elsewhere because of the harassment, to which Delvecchio responded that he would stop if Plaintiff returned to work. It did not.

A few days after Plaintiff returned to work, Plaintiff was finishing up tasks in the car lot at the end of her shift. She was the last employee at work that evening besides Delvecchio. Plaintiff went to grab her things and go home when Delvecchio called her into his office. When Plaintiff entered the office, she observed Delvecchio behind his desk who appeared to be masturbating

2

although she could not 100% see at that moment. Delvecchio then asked Plaintiff if she liked him, and Plaintiff responded that "you are my boss." Delvecchio ordered Plaintiff to come to his side of the desk which Plaintiff now confirmed Delvecchio had, in fact, exposed his penis and was masturbating Plaintiff immediately said "no, stop" and "I can't have sex with you". Plaintiff also put up her hands in a defensive position gesturing to stop. Delvechhio disregarded this rejection and grabbed Plaintiff's hand putting it on his genitals against her will as Plaintiff continued to try to pull away but could not against his grip. Delvecchio then took his other hand and slid it down Plaintiff's pants and inserted his fingers into her anus against her will. Delvecchio then forcibly moved Plaintiff's hand up and down on his penis until he ejaculated within a few seconds. Plaintiff immediately freed herself and ran to the bathroom where she cried and promptly vomited from the instant trauma and emotional distress she suffered.

The next day Delvecchio terminated Plaintiff claiming that she was a mess and a problem to the office. When terminating Plaintiff, Delvecchio stated that he vowed to ensure Plaintiff would never work for another car dealership again. On her way out, Plaintiff told Joanne that she had been sexually assaulted. Plaintiff and her mother later lodged a complaint at the local police precinct and met with detectives for several hours recounting the sexual harassment and assault.

### EMOTIONAL DISTRESS

Plaintiff suffered severe emotional distress as discussed below which entitles her to a significant emotional distress damages award even in the absence of a treating mental health professional. Plaintiff's testimony was corroborated by her mother who testified similarly to Plaintiff. Plaintiff testified that she felt powerless by Delvecchio's conduct. See Bick v. City of New York, No. 95 Civ. 8781, 1998 WL 190283 (S.D.N.Y. Apr. 21, 1998) ($100,000) ("devastated" and at times "hysterical," anxiety, depression, **feelings of powerlessness**, and "suicidal ideation") (emphasis added). Plaintiff further testified that she suffered from anxiety as a result of the harassment, assault, and termination. See Duarte v. St. Barnabas Hosp., 341 F. Supp. 3d 306 (S.D.N.Y. 2018) ($125,000) (**garden-variety anxiety**, sleeplessness, headaches, stomach aches, and loss of self-esteem); Cross v. New York City Transit Auth., 417 F.3d 241 (2d Cir. 2005) ($50,000) (**garden-variety** humiliation, anger, frustration, shame, loss of interest in family activities, depression, **anxiety**, and impaired relationships with wife and children).

Plaintiff also testified that after Delvecchio assaulted her, she began to cry, felt shame, disgust, became depressed, and vomited in the bathroom. *See* Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012) ($250,000) (tension headaches, abdominal pain, insomnia, **anxiety**, **depression**, reclusiveness, frequent **crying**, **vomiting**, and diarrhea) (emphasis added); Cross v. New York City Transit Auth., 417 F.3d 241 (2d Cir. 2005) ($50,000) (**garden-variety** humiliation, anger, frustration, **shame**, loss of interest in family activities, **depression**, anxiety, and impaired relationships with wife and children). Plaintiff also testified that she began cutting her hair as a

3

result of the emotional distress she suffered from the assault.  *See* Emamian v. Rockefeller Univ., No. 07 CIV. 3919 (DAB), 2018 WL 2849700 (S.D.N.Y. June 8, 2018), judgment entered, No. 07 CIV. 3919 (DAB), 2018 WL 10604748 (S.D.N.Y. Dec. 11, 2018), and aff'd, 971 F.3d 380 (2d Cir. 2020), and aff'd, 823 F. App'x 40 (2d Cir. 2020) ($200,000) (**hair loss**, **pulling out hair**, generalized anxiety disorder, difficulty sleeping, loss of appetite, depression, suicidal ideation)(emphasis added).  Plaintiff also testified she felt degraded by Delvecchio.  Smith v. Tiffany & Co., No. 1B–E–CS–84–97230 (State Div. of Human Rights, Aug. 11, 1995), aff'd, 224 A.D.2d 332, 638 N.Y.S.2d 454 (1st Dep't 1996) ($300,000) (**feeling degraded**, blow to self-esteem, severe depression, anxiety, agitation, occasional anorexia, and insomnia).

Plaintiff and her mother similarly testified that Plaintiff began to withdraw from her family activities and stopped participating in recreational activities such as shopping.  Phillips v. Bowen, 278 F.3d 103 (2d Cir.2002) ($400,000) (daily crying, stomach problems, inability to handle pressure of dealing with work supervisors, **reduced enjoyment of life**, and **stopped participating in recreational activities Plaintiff once enjoyed**) (emphasis added).

Accordingly, Plaintiff respectfully requests the Court award Plaintiff a significant emotional distress damages award in excess of "six figures".

PUNITIVE DAMAGES

Plaintiff seeks a significant punitive damages award given the unconscionable and abhorrent nature of Delvecchio's behavior.  Under Title VII and the NYSHRL, a prevailing party is entitled to punitive damages where Defendants "engaged in intentional discrimination...with malice or reckless indifference to Plaintiff's federally protected rights.  Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 384 (2d Cir. 2001).  While the Second Circuit has not recognized a formula to determine the specific dollar amount, the Supreme Court has delineated several factors for Courts to consider: (1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases." *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 U.S. Dist. LEXIS 114001, 2011 WL 4549412, at *5 (S.D.N.Y Sept. 27, 2011) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).  In sexual assault cases, courts in this Circuit frequently award punitive damages punitive damages that are equal to or less than compensatory damages. *See* Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997).

Here, Delvecchio's actions were unquestionably reprehensible.  Delvecchio acted with malice and utter disregard for Plaintiff's rights to be free from sexual harassment and sexual assault in the work place.  From Plaintiff's initial interview Delvecchio began a campaign of sexual harassment that did not stop despite Plaintiff rejecting his advances several times and culminated with him sexually assaulting her.  Delvecchio commented that he desired to see Plaintiff's other tattoos hidden under her clothes, told her several times per week throughout her employment that

she was beautiful and had a nice body – all of which made Plaintiff uncomfortable. Delvecchio further repeatedly asked Plaintiff to go on several dates, even after she rejected him the first time he asked. Delvecchio did not stop harassing Plaintiff despite her numerous objections to her conduct.

Most egregious is Delvecchio's sexual assault on Plaintiff. From the moment Plaintiff entered his office (at Delvecchio's request) he had already began masturbating behind his desk. When Plaintiff told him "no" that she did not want to have sex with him and put up her hands in defense, Delvecchio grabbed her hands and placed it on his penis. He then began forcibly moving Plaintiff's hand on his penis until he ejaculated within a few seconds. Delvecchio also digitally penetrated Plaintiff's anus while forcibly grabbing her. For these reasons, Plaintiff respectfully requests a significant punitive damages award.

It also should be noted that by defaulting, Defendants have surrendered the opportunity to demonstrate that financial circumstances should constrain the amount of any such punitive damages award. *See* Mathie, 121 F.3d at 816.

Plaintiff thanks the Court for its time and consideration of the herein matters.

    Respectfully submitted,

    _____/s/_____
    Joshua M. Friedman, Esq.